IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHELLE THOMAS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DELAWARE STATE UNIVERISTY, ) | C. A. No. 10-522-GMS |
| LANCE T. HOUSTON, ) | |
| individually and in his official capacity, ) | |
| AMIR MOHAMMADI, ) | |
| individually and in his official capacity, and ) | |
| OFFICER HEATHER COOKE, ) | |
| individually and in her official capacity, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**

**I.  INTRODUCTION**

On June 14, 2010, the plaintiff, Michelle Thomas ("Thomas"), filed this lawsuit against Delaware State University ("DSU"); the Assistant Vice President for Legal Affairs at DSU, Lance T. Houston ("Houston"); the Vice President for Finance and Administration at DSU, Amir Mohammadi ("Mohammadi"); and a police officer employed by DSU, Heather Cooke ("Cooke") (collectively, "the Defendants"). (D.I. 1.) Since filing her Complaint, Thomas has stipulated to the dismissal of several of her original claims. (D.I. 61.) As such, the only remaining claims are: (1) unlawful First Amendment retaliation against DSU, Houston, and Mohammadi, pursuant to 42 U.S.C. § 1983, (2) violations of Thomas' Fourteenth Amendment procedural due process

rights against DSU, Houston, and Mohammadi, pursuant to 42 U.S.C. § 1983, and (3) violation of the Delaware Whistleblowers' Protection Act ("WPA") against DSU, Houston, and Mohammadi, pursuant to 19 Del. C. § 1701 et seq.[1] Presently before the court is the Defendants' motion for summary judgment.[2] (D.I. 57.) For the reasons stated below, the court will grant the Defendants' motion for summary judgment.

## II. BACKGROUND

Thomas was hired by DSU in December 2001 as a Senior Secretary. (D.I. 65, Ex. B at 11.) In addition to her employment, Thomas was involved with the union representing DSU's administrative and clerical employees—AFSCME Local 1007. (Id. at 15.) Thomas became Union President in 2006 or 2007. As Union President, Thomas brought grievances against DSU on behalf of union members and represented employees in disputes with the school. (Id. at 22–23.) The majority of grievances concerned violations of the Collective Bargaining Agreement ("CBA"), such as assigning work outside prescribed job descriptions, failing to pay at proper pay grade, etc. (Id. at 23–23; Ex. M.) Thomas also made complaints of unsafe working conditions, claiming there was mold and asbestos in some of the older buildings. (D.I. 65, Ex. B at 122–23.)

On October 8, 2008, Officer Cooke arranged to have Thomas' car towed from a DSU parking lot for having several unpaid parking tickets. (D.I. 59, Exs. E–G.) Thomas, who was working nearby, came outside to confront Cooke and stop the towing. (Id. Ex. G.) The parties dispute the events that followed, but some sort of altercation ensued in which Thomas unlawfully touched Cooke. (Id. Ex. H at 3–4.) Cooke ultimately did not tow the car, and Thomas reported

---

[1] The stipulation eliminated all claims against Cooke, and she was dismissed from the lawsuit.
[2] Thomas filed her brief opposing the motion for summary judgment on November 15, 2013. (D.I. 65.) The format of Thomas' brief was not in compliance with the District of Delaware Local Rule 7.1.3. Given its regrettable delay in addressing the instant motion, the court elects not strike the non-conforming brief, but the court takes this opportunity to remind parties that the Local Rules are to be followed strictly in the future.

to the Public Safety Department to pay the outstanding parking fines. (*Id.* Ex. C at 34.) Thomas also was not arrested at the time. (*Id.* at 52.) Cooke subsequently pressed charges, however, and a warrant issued for Thomas' arrest on October 23, 2008, listing two charges: offensive touching of a law enforcement officer and disorderly conduct. (*Id.* Ex. J.) Thomas was formally arrested on November 6, 2008. (*Id.* Ex. K.)

Following the arrest, DSU conducted its own investigation. On November 19, 2008, Thomas met with Mohammadi and Karen Valentine, a staff representative for the union, to discuss the incident with Cooke and the arrest. (*Id.* Ex. C at 73–74; Ex. L.) Thomas denied any wrongdoing. (*Id.* Ex. C at 74.) DSU and Mohammadi elected not to take any action at that time; Mohammadi testified that he was reluctant to discipline Thomas because of the ongoing collective bargaining negotiations between DSU and the union. (*Id.* Ex. A at 82.) Thomas' criminal prosecution continued into 2009.

In June 2009, Thomas filed a grievance on behalf of the union against Mohammadi's son. (D.I. 65, Ex. N.) The grievance concerned work being performed by a non-union member, in violation of the CBA. (*Id.* Ex. C at 8.) In a conversation with Valentine, Mohammadi was reportedly very upset that Thomas was "going after" his son. (*Id.* C at 9, 11; D.I. 66, Ex. 2 at 142–43.) Thomas testified that Mohammadi had told Valentine: "How dare she file a grievance against my son? I will not stand for it and I will get her for this." (D.I 65, Ex. B at 109.) Thomas was not present during the conversation.

On December 1, 2009, Thomas entered a guilty plea to the charge of offensive touching, in exchange for a sentence of unsupervised probation. (D.I. 59, Ex. H.) Upon learning of the guilty plea, Mohammadi instructed Houston to prepare a notice informing Thomas of her

3

termination. (D.I. 65, Ex. H at 48–49.) On December 3, 2009, Houston issued Thomas a Notice of Paid Administrative Leave and Intent to Terminate ("Notice"). (D.I. 59, Ex. L.) The Notice stated that Thomas was to be terminated for giving false statements during DSU's investigation into her incident with Cooke. (*Id.*) The Notice gave Thomas the option of having a pre-termination hearing, which Thomas exercised. (*Id.*; Ex. N.)

On January 21, 2010, DSU held a pre-termination hearing for Thomas, with Houston conducting the hearing. (*Id.* Ex. C at 99.) Valentine was also present; she represented Thomas and responded to the charges against her. (*Id.* at 99, 102.) Valentine argued that Thomas had not lied about her conduct, that the termination was retaliation and in violation of the CBA, and other reasons why Thomas should not be terminated. (*Id.* at 100–02.)

On February 9, 2010, Houston issued a Notice of Termination to Thomas based on the charges outlined in the original Notice. (*Id.* Ex. D.) The decision to terminate had come from Mohammadi. (*Id.* Ex. A at 113.) Thomas subsequently filed a grievance claiming that her termination violated provisions of the CBA. (*Id.* Ex. C at 71.) On November 17, 2010, an arbitrator ruled that Thomas' termination had indeed violated the CBA and that Thomas was to be reinstated to her position at DSU, without backpay. (*Id.* Ex. Q.) Thomas returned to work at DSU on December 1, 2010. (*Id.* Ex. C at 12–13.)

### III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* Celotex *Corp. v. Catrett*, 477 U.S. 317, 322

4

(1986). The moving party bears the burden of proving that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n.10 (1986). A fact is material if it "could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). There is a genuine issue "if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* When determining whether a genuine issue of material facts exists, the district court must view the evidence in the light most favorable to the nonmoving party and draw inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party must then "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citing Fed. R. Civ. P. 56(e)).

The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *Id.* The party opposing summary judgment must present more than just "mere allegations, general denials, or . . . vague statements" to show the existence of a genuine issue. *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). As such, a nonmoving party must support their assertion that a material fact is in dispute by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse

party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of its case for which it has the burden of proof. *Celotex*, 477 U.S. at 322.

## IV. DISCUSSION

The court notes at the outset that Thomas conceded in her present briefing that DSU is not amenable to suit under § 1983, and that the individual defendants, Houston and Mohammadi, are not amenable to suit under Delaware's WPA. (D.I. 65 at 19, 21 n.11.) Thus, the remaining claims at issue are the § 1983 claims against Houston and Mohammadi and the WPA claim against DSU.[3] The court will address each of these in turn.

### A. Section 1983 Claims

Section 1983 provides: "Every person who under color of [law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead "merely provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." *Estate of Smith v. Marasco*, 318 F.3d 497, 505 (3d Cir. 2003). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state

---

[3] Although never stated by Thomas, the § 1983 claims may only proceed against Houston and Mohammadi in their *individual* capacities. Section 1983 actions against state actors in the official capacity are barred by Eleventh Amendment immunity. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity . . . should be treated as suits against the State.").

6

law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Thomas seeks relief pursuant to § 1983 for two alleged violations: (1) First Amendment retaliation and (2) employment termination without being afforded adequate procedural due process as required by the Fourteenth Amendment.

1. First Amendment Retaliation

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon*, 897 F.2d 103, 111–12 (3d Cir. 1990). Proof of a retaliation claim requires that the plaintiff demonstrate (1) she engaged in protected activity; (2) she was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Claims of unconstitutional retaliation must be evaluated critically, as they are "fraught with the potential for abuse." *See Blizzard v. Hastings*, 886 F. Supp. 405, 409 (D. Del. 1995).

In her Complaint, Thomas argues that the Defendants retaliated against her for exercising her First Amendment right to freedom of speech in connection with her union activities.[4] (D.I. 1, ¶¶ 48–50.) Specifically, she argues that the grievances she filed on behalf of AFSCME union members constituted protected speech and that these grievances were a substantial motivating factor in the Mohammadi and Houston's decision to terminate Thomas' employment. (D.I. 65 at 16–19.) In response, Mohammadi and Houston argue that Thomas was not engaged in protected

---

[4] In her brief in opposition to summary judgment, Thomas for the first time mentions her First Amendment rights to free association and petition as a basis for her retaliation claim. (D.I. 65 at 17.) "A plaintiff 'may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.'" *Bell v. City of Phila.*, 275 F. App'x 157, 160 (3d Cir. 2008) (quoting *Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir.1996)). These amendments to her original claim are not properly before the court and are therefore disregarded. Nonetheless, the court notes that its ultimate judgment would not have been influenced by these new theories, had they been properly asserted.

7

activity because she was not speaking as a private citizen on matters of public concern. (D.I. 58 at 12–15.) They also argue that Thomas has failed to point to any evidence demonstrating that her termination was causally related to her speech. (*Id.* at 9–12.)

The court looks first at whether Thomas' speech (*i.e.*, the grievances she filed on behalf of the union) constituted protected activity. This question is a matter of law. *Balas v. Taylor*, 567 F. Supp. 2d 654, 663 (D. Del. 2008) (citing *Hill v. City of Scranton*, 411 F.3d 118, 127 (3d Cir. 2005)). For a public employee's speech to be protected, (1) she must have made the statements as a citizen, (2) the statement must involve a matter of public concern, and (3) the government employer must not have an adequate justification for treating the employee differently from a member of the public. *Hill v. Borough of Kutztown*, 455 F.3d 225, 241–42 (3d Cir. 2006) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

The court initially agrees with Thomas that her actions as Union President were distinct from her DSU job obligations, and therefore she spoke as a private citizen rather than a public employee. The holding in *Garcetti v. Ceballas* focuses on whether the speech or activity at issue was inherent in the plaintiff's "official duties" of public employment. 547 U.S. 410, 421 (2006). Thomas was not *required* to serve as AFSCME Union President as part of her DSU employment, making her activity on behalf of the union that of a private citizen. *See Justice v. Danberg*, 571 F. Supp. 2d 602, 609 (D. Del. 2008). A contrary holding would severely undermine employees' ability to participate in unions without fear of retaliation, and "union activity would cease to be a fundamental right protected under the Constitution, . . . contradict[ing] decades of Supreme Court precedent." *See id.* at 609–10.

Mohammadi and Houston's reliance on *Hill v. City of Philadelphia*, where the Third

Circuit apparently reached the opposite conclusion, is slightly off base. 331 F. App'x 138, 142 (3d Cir. 2009). The court—acknowledging that it draws a fine distinction—finds that *Hill* did not squarely address the issue of whether one participating in union activity acts as an employee or as a citizen. *See id.* Rather, the Third Circuit focused on the plaintiff's burden of proof:

> *[A]ppellant fails to demonstrate* that his representation of Osborne is the type of speech which entitles him to First Amendment protection. Specifically, *appellant did not show* that he was acting as a citizen in his union representation of Osborne or that the speech he engaged in during that representation was a matter of public concern.

*Id.* (emphasis added). Although the law is not well defined, the court finds Thomas was acting as a private citizen when filing grievances on behalf of union members.

The court, however, must turn to whether Thomas' speech touched on matters of public concern. After reviewing the facts on the record, the court finds that Thomas has failed to demonstrate that the grievances she filed satisfy this requirement. "A public employee's speech involves a matter of public concern if it can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Green v. Phila. Hous. Auth.*, 104 F.3d 882, 885–86 (3d Cir. 1997) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). Here, the record reveals that all of the Thomas' grievances dealt with specific and individualized employment issues, not of concern to the community. Where grievances do "not seek to communicate to the public or to advance a political or social point of view beyond the employment context, . . . [they] cannot form the predicate for a First Amendment retaliation claim." *Emigh v. Steffee*, 442 F. App'x 660, 666 (3d Cir. 2011) (internal quotation marks omitted) (quoting *Borough of Duryea, Pa. v. Guarnieri*, 131 S. Ct. 2488, 2501 (2011)); *see also Van Compernolle*

*v. City of Zeeland*, 241 F. App'x 244, 251 (6th Cir. 2007) ("[Plaintiff] must do more than merely associate his speech and activity with the union and our cases have consistently examined the focus of the speech or activity to determine if it addresses a matter of public concern. Otherwise, virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case. The focus of [plaintiff's] activity in the present case was merely to advance, collectively, internal personnel issues." (internal quotation marks and citations omitted)).

Thomas admitted during her deposition testimony that all of the grievances she filed centered on "working conditions and other issues in union members' employment." (D.I. 59, Ex. C at 28.) Thomas asserts that she filed grievances concerning asbestos and mold problems at DSU (although she does not specifically mention these grievances in the context of her "public concern" argument). (D.I. 65 at 22.) Such grievances could possibly touch on matters of public concern. Thomas, however, fails to support these claims with any evidence in the record that would allow a reasonable factfinder to draw an inference in her favor. Thomas' grievance chart—which she states should be a complete record of the pending grievances—contains no mention of asbestos, mold, or any other health related issue. (D.I. 65, Ex. M.) None of the actual grievance forms in the record support her assertion either. (D.I. 59, Ex. R.)

The record is devoid of support for Thomas' claim that her speech touched on matters of public concern. Thomas' grievances involved internal personnel matters, rather than issues of interest to the broader community. Having failed to establish this prong, Thomas cannot demonstrate that she engaged in protected activity.

Even assuming Thomas was engaged in protected activity, the court finds there is no

evidence supporting the third prong of the First Amendment retaliation analysis: the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *Rauser*, 241 F.3d at 333. There must be a causal connection between the activity and the termination, as evidenced by "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F. 3d 259, 267 (3d Cir. 2007).

Thomas does not argue that there was an unusual temporal proximity but rather a pattern of antagonism. (D.I. 65 at 18–19.). First, she argues that Mohammadi targeted Thomas because she had filed a grievance against his son in June 2009, six months before her termination. (D.I. 65, Ex. N.) According to Thomas' deposition, Mohammadi told Valentine that he was going to "get" Thomas for "coming after" his son. (*Id.* Ex. B at 108–09.) This double hearsay statement, which also appeared in Thomas' complaint, (D.I. 1, ¶ 15), is not supported by either Mohammadi's or Valentine's testimony. (D.I. 67, Ex. 1 at 11; Ex. 2 at 142–43.)

Thomas also argues that her grievances and union activity created a strained relationship with Houston. (D.I. 65 at 19; Ex. C at 13–14.) However, Thomas fails to show that Houston's conduct was causally related to Thomas' union activity in particular. In fact, Valentine's testimony reveals that Houston's "pattern of antagonism" was not even directed primarily at Thomas: "[Houston] had been . . . very intimidating, very hostile, not with just Michelle [Thomas], but most of our members, and in particular with me [Valentine] . . . ." (D.I. 65, Ex. C at 13.) To establish a retaliation claim, the pattern of antagonism must be causally connected to—*i.e.*, a product of—the protected activity. Thomas' evidence shows any antagonism from Houston was his ordinary demeanor and not causally related to Thomas' specific protected

11

activity.

Thomas has failed to establish that she engaged in protected activity. Moreover, the court finds no causal connection between her activity and her ultimate employment termination. There is no genuine issue of material fact for the factfinder. The court grants the Defendants' motion for summary judgment as to Thomas' § 1983 First Amendment retaliation claim.[5]

2. <u>Denial of Procedural Due Process</u>

The Due Process Clause of the Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The procedural aspect of the Due Process Clause mandates that individuals have a "meaningful" opportunity to contest significant deprivations of liberty or property. *Abbott v. Latshaw*, 164 F.3d 141, 146–47 (3d Cir.1998). In the context of public employment, the procedures for terminating an employee are relatively well defined. Before an employee is to be terminated for cause, she is entitled to a pre-termination hearing. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545–46 (1985). The "formality and procedural requisites for the hearing can vary," but at a minimum, the employee must be given "notice and an opportunity to respond." *Id.* The pre-termination hearing serves only as an "initial check against mistaken decisions," *id.* at 545, and "need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story." *Gilbert v. Homar*, 520 U.S. 924, 929 (1997). The employee is entitled to more comprehensive process at a post-termination hearing. *See id.*

---

[5] Having found no constitutional violation, the court need not address the Defendants' additional defense of qualified immunity. (D.I. 66 at 1–3); *see Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011). The court notes, however, that the lack of clear precedent regarding the status of union activity as protected speech lends support for the Defendants' assertion that—had the court found a constitutional violation—the right might not be considered "clearly established." *See Schmidt*, 639 F.3d at 595.

Thomas argues that she did not receive a pre-termination hearing as required by *Loudermill*. (D.I. 65 at 11–12; Ex. B at 12.) Thomas argues that the hearing she received was not a pre-termination hearing and did not comport with due process under *Loudermill* or the CBA. (*Id.*) Mohammadi and Houston maintain that the pre-termination hearing provided Thomas all the process she was entitled to at that stage. (D.I. 58 at 15–16; D.I. 66 at 6–9.)

The court rejects Thomas' first argument that the hearing was not, in fact, a pre-termination hearing. The facts show that on December 3, 2009, Thomas received a Notice of Paid Administrative Leave and Intent to Terminate. (D.I. 59, Ex. L.) By its express terms, this Notice did not actually terminate Thomas' employment, but simply notified her of DSU's *intent* to terminate "effective three days (3) from the date of this notice," unless Thomas requested a pre-termination hearing. (*Id.*) Thomas was placed on *paid* leave and therefore was not denied any property interest. *See Schmidt*, 639 F.3d at 587 ("[D]ue process requires notice and a hearing prior to suspension *without pay* . . . ." (emphasis added)). Thomas clearly was not terminated before the January 21, 2010, hearing.

The court also finds that the pre-termination hearing conducted by Houston provided due process under the Fourteenth Amendment. *Loudermill* states:

> The essential requirements of due process . . . are *notice and an opportunity to respond*. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. . . . To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Loudermill*, 470 U.S. at 546 (emphasis added). Thus, beyond setting a floor for what process must be offered (*i.e.*, notice and opportunity to respond), *Loudermill* does not provide any

13

additional requirements as to the content of a pre-termination hearing. The record shows that Thomas was afforded notice and an opportunity to respond. The Notice provided the basis for her termination by going into specific detail concerning Thomas' altercation with Cooke, the ensuing investigation, arrest, and her ultimate guilty plea. (D.I. 59, Ex. L.) Moreover, Thomas was represented by Valentine at the pre-termination hearing, who responded to the charges. (D.I. 59, Ex. C at 102.)

Thomas incorrectly equates the procedures outlined in the CBA with the due process mandated by the Fourteenth Amendment. (D.I. 65 at 14–15.) While compliance with the CBA may be sufficient to satisfy Fourteenth Amendment due process and *Loudermill*, the inverse is not necessarily true. The Constitution defines the "minimum procedural requirements," which cannot be diminished by state law. *See Loudermill*, 470 U.S. at 541. Consequently, state law and private contracts (like the CBA) are free to require stricter procedures. But violations under state law do not take on Constitutional import. *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307 (2d Cir. 2002) ("[T]he Constitution, not state law sources such as the CBA, determines what process is due."); *cf. McMullen v. Maple Shade Twp.*, 643 F.3d 96, (3d Cir. 2011) (finding that arrests made in violation of state laws "that afford individuals protections beyond those found in the United States Constitution . . . are not, in and of themselves, actionable under § 1983").

Thomas has failed to provide evidence that she was denied Constitutional due process at her pre-termination hearing. The court grants the Defendants' motion for summary judgment as to Thomas' § 1983 denial of due process claim.

### B. Violation of Delaware's Whistleblowers' Protection Act

The WPA provides:

14

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment:
> > (1) Because the employee, or a person acting on behalf of the employee, reports or is about to report to a public body, verbally or in writing, a *violation* which the employee knows or reasonably believes has occurred or is about to occur....

19 Del. C. § 1703 (emphasis added). The WPA only applies to narrow categories of violations as defined in the statute. § 1702(6). Specifically, the WPA covers employees who report violations involving "health, safety or environmental hazards" or "fraud, deceit, or misappropriation of public or private funds or assets under the control of the employer." *Id.*

Thomas argues that she was terminated because she reported asbestos and mold problems with the DSU facilities—a health or safety violation as defined by the WPA. (D.I. 65 at 22.) DSU responds that Thomas has failed to adduce any evidence that she complained of these violations or, if she did, that the Defendants were aware of such complaints; DSU argues, therefore, that Thomas cannot satisfy her burden of proof as a matter of law.[6] (D.I. 58 at 19–20; D.I. 66 at 10.)

The court notes that its supplemental jurisdiction over Thomas' state law WPA claim originally stemmed from her federal § 1983 claims. *See* 28 U.S.C. § 1367(a). Because there is no longer an active federal question, the court declines to exercise supplemental jurisdiction. *See* § 1367(c)(3); *Shaffer v. Bd. of Sch. Dirs. of Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 913 (3d Cir. 1984) ("[I]f the federal claims are dismissed before trial, even though not insubstantial

---

[6] The court has previously held that state defendants are entitled to Eleventh Amendment immunity from WPA claims in federal court. *See Fender v. Del. Div. of Revenue*, No. 12-1364-GMS, 2014 WL 4635416, at *5–6 (D. Del. Sept. 15, 2014). Although DSU asserted Eleventh Amendment immunity as a general affirmative defense in its pleadings, (D.I. 15 at 9), no part of its summary judgment briefing requests Eleventh Amendment immunity from Thomas' WPA claim. As such, the defense is waived.

15

in a jurisdictional sense, the state claims should be dismissed as well." (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))). The court dismisses Thomas' WPA claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

Even if the court were to exercise jurisdiction, however, the claims would fail because Thomas has not produced evidence demonstrating that she was fired *because* she reported mold and asbestos violations. *See* 19 Del. C. § 1703. Thomas is unable to point to any proof beyond her deposition testimony that she made such complaints at all. (D.I. 65, Ex. B at 120–23.) Accepting the truth of Thomas' statements, the court still finds that the testimony lacks any specific information which would allow a factfinder to make an inference of causation. Thomas fails to provide approximate dates for when these complaints were made besides one complaint in 2003, more than six years prior to her termination, and before Thomas served as Union President. (*Id.* at 123.) As discussed above in the context of Thomas' retaliation claim, timing is a critical factor in assessing causation. *Cf. DeFlaminis*, 480 F. 3d at 267 (explaining that, in the § 1983 retaliation context, a causal connection may be shown by "(1) an unusually suggestive *temporal proximity* between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism *coupled with timing*" (emphasis added)). Moreover, Thomas fails to offer any testimony indicating that Mohammadi—the person "who made the decision to terminate [Thomas]" (D.I. 65 at 6)—knew of these complaints. Thus Thomas has failed to establish a chain of causation leading from her alleged complaints of safety violations to her ultimate discharge from employment. Thomas' WPA claim fails as a matter of law.

## V.  CONCLUSION

In light of the foregoing, the court grants the Defendants' motion for summary judgment. (D.I. 57.)

Dated: October 6, 2014

_____
UNITED STATES DISTRICT JUDGE